UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| FREDERICK A MCCULLOCH; aka | § | |
| BODY OF CHRIST CAMP; dba | § | |
| FREEDOM BIBLE RESEARCH | § | |
| INSTITUTE, A FREE CHURCH, *et al*, | § | |
| | § | |
| Appellants, | § | |
| VS. | § | CIVIL ACTION NO. 2:13-CV-374 |
| | § | |
| FRANCES MCCLINTOCK, | § | |
| | § | |
| Appellee. | § | |

## OPINION AND ORDER

Before the Court are cross-appeals concerning the Bankruptcy Court's order finding contempt regarding a violation of the Bankruptcy Debtors' discharge injunction and related monetary award.  The Debtors, Frederick and Betty McCulloch, complain in four issues that the Bankruptcy Court erred with respect to certain findings, failed to award sufficient damages, and should have awarded the damages jointly and severally against the Creditors, Francis and Siobahn McClintock, and their attorney.  The Creditors, in three issues, complain that they did not violate the discharge injunction, that the damages are not warranted, and that the discharge injunction should be modified *nunc pro tunc* to expressly permit the state court action they are engaged in.  For the reasons set out below, the Bankruptcy Court's Orders (375/D.E. 3-34, 3-45)[1] are AFFIRMED.

---

[1]   There are two records on appeal:  one filed in each of the consolidated cases.  Items filed in 13-cv-374 are referenced as "374/ D.E. #-#" and those filed in 13-cv-375 are referenced as "375/D.E. #-#."  Exhibits offered at the bankruptcy contempt hearings are referred to by date of hearing (such as 9/16/13) and by Exhibit Number, denoted "DX" for Debtors' Exhibit and "CX" for Creditors' Exhibit.

## FACTS

### A.  The Creation, Funding, and Status of FBRI

On or about July 29, 1996, Debtor Frederick McCulloch formed a California corporate entity named Freedom Bible Research Institute, A Free Church (FBRI), which was eventually qualified to do business in Texas.  9/16/13 CX 17A.  Betty McCulloch, who married Frederick McCulloch after FBRI's formation, had nothing to do with the formation of the California corporation, but took the action necessary to domesticate it in Texas.  374/D.E. 3-6, pp. 55-56.

In the late 1990s, Debtors purchased land that they donated to FBRI for the purpose of having a retreat facility in the Corpus Christi area for use by different Christian religious organizations.   374/D.E. 3-6, pp. 6, 30; 374/D.E. 12, pp. 48, 52. While that ministry continued, Debtors voluntarily revoked the California corporate charter on January 7, 2002.  374/D.E. 3-6, pp. 7-8; 9/16/13 CX 17A.  Debtors trusted that those using the camp facilities would donate to FBRI for the continued viability of the camp.  It is through those voluntary donations and the McCulloch's support that FBRI continues to offer the camp for religious uses.

The Debtors conduct church operations on the Texas property as FBRI, treating it as an unincorporated non-profit organization using the name, Body of Christ Camp (Camp).  The property remains titled in the name of FBRI a/k/a Camp, and includes 113 acres of real estate with nine buildings.  9/16/13 Frederick McCulloch Proffer; 374/D.E. 3-6, pp. 14, 30; 374/D.E. 12, pp. 48, 52.  It is undisputed that Debtors claim no ownership interest in the property in their individual capacities.  375/D.E. 3-6 (Debtors' Schedule A

showing no claim to ownership of realty); 374/D.E. 3-6, p. 16.   However, Debtors continue to act as stewards for FBRI a/k/a Camp and they filed a d/b/a certificate to allow them to conduct banking on FBRI's behalf.  9/16/13 Betty McCulloch's Proffer; 9/16/13 Frederick McCulloch Proffer; 374/D.E. 3-6, pp. 51-52, 54, 69-71.

## B.  The Personal Injury State Court Case

One of the independent Christian religious organizations, Love Demonstrated Ministries, held a boot camp run by a Mr. Flowers at the facility prior to February 2012. 374/D.E. 3-6, p. 12.  During that boot camp, Mr. Flowers and others allegedly injured Siobahn McClintock, a minor at the time, through disciplinary punishments described as waterboarding and dragging her by a rope behind a vehicle.  374/D.E. 3-6, p. 12.  Ms. McClintock and her mother (jointly "Creditors") filed a state court lawsuit in Bexar County[2] against Flowers, his organization, Debtors, and others, seeking damages for the personal injuries that occurred at the Camp.  Four citations were issued to Debtors:  one each to Betty McCulloch and Frederick McCulloch, individually; and one each to them, sued "DBA Freedom Bible Research Institute, a Free Church AKA Body of Christ Camp."  9/16/13 DX 2, CX 6-9.

Debtors deny knowing anything about Flowers' operation or Siobahn McClintock's injuries.  9/16/13 Betty McCulloch Proffer; 9/16/13 Frederick McCulloch Proffer.  However, in response to the potential liability and expense of that lawsuit,

---

[2]  A previous lawsuit had been filed in Nueces County and was dismissed or nonsuited.  374/D.E. 3-6, p. 82.  A subsequent lawsuit was filed in Bexar County and is the subject of the contempt proceedings on appeal here.  *Id.*

Debtors filed for relief under Chapter 7 of the United States Bankruptcy Code on February 16, 2012.  9/16/13 Betty McCulloch Proffer; 374/D.E. 3-1, p. 2, D.E. 3-6, p. 8.

**C. The Bankruptcy Case**

The bankruptcy case was filed by Debtors individually and d/b/a FBRI a/k/a Camp.  374/D.E. 3-6, p. 10; 375/D.E. 3-5, p.1; 9/16/13 DX 5.  The inclusion of FBRI and Camp was required by the Bankruptcy Code as full disclosure of any other name that they have ever used.  374/D.E. 3-7, pp. 45-46.  However, during the 11 U.S.C. § 341 Meeting of Creditors, Debtors testified that FBRI a/k/a Camp was a separate legal entity. 374/D.E. 3-6, p. 10; 9/16/13 DX 8.  The bankruptcy case did not involve any separate entity by the name of FBRI a/k/a Camp, and its assets (the Camp land and buildings) were not subject to distribution.  374/D.E. 3-6, p. 13.

Initially, when it appeared that Debtors might own assets subject to distribution, Creditors filed their Proof of Claim reflecting a general unsecured and unliquidated claim based upon the state court litigation.  9/16/13 DX 6.  Creditors then sought and obtained an order lifting the automatic stay of 11 U.S.C. § 362 so that they could liquidate their claim against the Debtors and file an amended proof of claim for purposes of partaking of an eventual distribution.  375/D.E. 3-7 (Motion to Lift Stay); 375/D.E. 3-12 (Lift Stay Order); 375/D.E. 3-14 (Notice of Assets).  That order, entered June 11, 2012, permitted Creditors to proceed with their state court lawsuit against Debtors to judgment for the purpose of liquidation of the claim only—not for collection purposes.  374/D.E. 3-6, pp. 9, 94; 375/D.E. 3-12.  Creditors filed an advisory in the state court action to that effect on

June 29, 2012.  374/D.E. 3-6, p. 94.  Thereafter, Debtors' counsel agreed to a trial setting. 374/D.E. 3-6, pp. 94-95.

Eventually, it was determined that Debtors' bankruptcy was a no asset case. 374/D.E. 3-1, p. 7; 374/D.E. 3-6, p. 5.  The Bankruptcy Court entered its order of discharge pursuant to 11 U.S.C. § 727 on December 11, 2012, eliminating the Creditors' claims against Debtors and, pursuant to 11 U.S.C. § 524, placing an injunction against any further collection efforts.  374/D.E. 3-6, p. 21; 375/D.E. 3-17.  Creditors did not object to Debtors' discharge; neither did they object to the dischargeability of their claimed debt.  374/D.E. 3-6, p. 17.  There was no longer any reason to liquidate their claim against the Debtors.

## D. Post-Discharge Contempt

Creditors, knowing that a discharge order had been entered, persisted in prosecuting the state court action, requesting a trial date from the state court by motion filed January 30, 2013.  374/D.E. 3-6, pp. 21, 77; 9/16/13 DX 12.  Debtors' attorney demanded dismissal of Debtors from the case and threatened a contempt action by letter of April 17, 2013.  9/16/13 DX 14; 374/D.E. 3-6, pp. 84-85.  Creditors did not dismiss Debtors and Debtors received a Notice of Jury Trial Setting dated April 30, 2013, setting the state court action for trial on October 7, 2013.  9/16/13 DX 15, 16.  This prompted Debtors to re-open the bankruptcy case for purposes of enforcing the discharge injunction through the Bankruptcy Court's contempt powers.

Debtors proffered testimony of their surprise that Creditors continued to prosecute the state court action against them after their discharge.  Betty McCulloch testified that

she normally sleeps 7-8 hours per night.  But after Creditors continued to prosecute their action against Debtors after the bankruptcy discharge, she could only sleep 2-4 hours per night and was physically sick with stress, anxiety, and worry.  9/16/13 Betty McCulloch Proffer.  Frederick McCulloch was surprised and shocked when the prosecution of the state court action continued.  He would get up at night and know that Betty McCulloch was also up with lights on.  9/16/13 Frederick McCulloch Proffer.  When cross-examined, however, Fred McCulloch was substantially unaware of the state court prosecution or any significance that it posed for his individual liability.  374/D.E. 3-6, pp. 48-49.

Creditors maintain that their continued prosecution of the state court action was permitted by the order lifting the automatic stay, and they were permitted to continue the litigation against the Debtors, nominally or as trustees of the FBRI property, because they seek a judgment against FBRI which they intend to collect through the Camp property. 374/D.E. 3-6, pp. 7, 106-07, 111-12, 128-29.  They insist that the Debtors were named in that case only to the extent that they represented FBRI, noting that Betty McCulloch remains listed as FBRI's registered agent for service of process.  374/D.E. 3-6, pp. 8, 54-55.  The issue was muddied because Debtors took the position that they, in their individual capacities, were the only remaining defendants and that nothing short of dismissal of the case in its entirety would satisfy the discharge injunction.

Communications between the parties were impaired because Creditors' bankruptcy counsel sustained an injury that affected her work communications.  374/D.E. 3-6, pp. 128-29.  Creditors claim that when they sued Debtors, the allegations included

that FBRI was a partnership between the individual Debtors, and Debtors did not file a verified denial of that allegation.   374/D.E. 3-6, pp. 85-88.   Even so, Debtors, individually, were not required to be sued in order to proceed against FBRI.  374/D.E. 3-6, pp. 117-18.

Creditors did not dismiss the individual Debtors from the state court action or amend their pleading to make it clear that the only real party was FBRI.  374/D.E. 3-6, pp. 118-19.  Creditors do not want a dismissal of Debtors to operate as a dismissal of FBRI, who they claim was joined when they served Debtors "d/b/a FBRI a/k/a Camp." The statute of limitations now bars any new joinder of FBRI.  There was substantial discussion at the contempt hearing regarding whether and how a defunct corporation that continues to exist as an unincorporated association can be served in a common name. *E.g.*, 374/D.E. 3-6, pp. 116-17.

At any rate, Debtors sought and obtained an order reopening their bankruptcy case so that their order of discharge could be enforced with the Bankruptcy Court's contempt powers.  375/D.E. 3-21.  The state court action has been abated pending the outcome of this appeal of the contempt order.  D.E. 10/17/13 DX 1.  After the initial contempt hearing, Creditors sought an order lifting the abatement so as to proceed against FBRI a/k/a Camp as a separate partnership or unincorporated association.  But, initially, they did not dismiss Debtors from all claims for liability.  10/17/13 DX 3, 4.  Creditors did, however, prepare a nonsuit of the Debtors in their individual capacity on October 15, 2013, the eve of a second contempt hearing.  10/17/13 DX 6.  Creditors continue to argue in this appellate proceeding that Debtors, in both their individual capacities and "dba

FBRI aka Camp," still belong in the state court case so that Creditors may obtain a judgment by which they can execute against the FBRI realty.

**E. The Contempt Order**

The Bankruptcy Court declined to determine whether FBRI was properly joined as a party in the state court suit prior to the expiration of limitations.  The Bankruptcy Court found Creditors in contempt, holding that the discharge injunction replaced the automatic stay and thus prevailed over the lift stay order and precluded any continued prosecution of the state court suit against the Debtors.  375/D.E. 3-34.  The Bankruptcy Court found that, at the time of the first hearing, Creditors had failed to dismiss the state court claims against the Debtors in their individual capacities and that their failure to do so was willful.

The Bankruptcy Court ordered Creditors to immediately dismiss Debtors in their individual capacities and in their individual "dba" capacities.  Creditors were sanctioned and ordered to pay $5,000 in attorney's fees and $767.16 in expenses.  375/D.E. 3-34.  This award was significantly less than the amount sought by Debtors:  Betty McCulloch's physical and emotional suffering on a $100/day basis for a total of $7,700; sanctions of $250/day from the date of the cease and desist letter to the date of judgment of contempt for a total of $42,250; attorney's fees of $26,060; costs in the amount of $767.16; and punitive damages suggested as the lesser of $25,000 or 5% of the Creditors' net worth.  375/D.E. 3-33, p. 7.

A second contempt hearing arose out of Creditors' failure to fully dismiss the Debtors in both their individual and "dba" capacities.  The Bankruptcy Court issued a

second order clarifying the previous order.  The Court again refused to make any finding regarding whether FBRI, as a separate legal entity, had been, or could be, joined in the state court lawsuit.  And the Bankruptcy Court made it clear that Debtors, in both their individual and "dba" capacities must be dismissed immediately, regardless of how the state court decided to treat the issue of joinder of FBRI.  375/D.E. 3-45.

### F.  The Appeal

Both sides have appealed.  Debtors complain of the Bankruptcy Court's refusal to address the number and character of parties to the state court suit, hoping to show that FBRI was not counted as a separate party and thus was not joined prior to the limitations bar.  Debtors also complain that the damages are inadequate and should have been awarded against Creditors and their attorney, jointly and severally.  Creditors complain that the contempt finding was in error, given the power granted to them through the lift stay order and that the damages are excessive.  Creditors also complain that the Bankruptcy Court should have modified the discharge injunction *nunc pro tunc* to make it consistent with the lift stay order.

### DISCUSSION

### A.  The Bankruptcy Court did not err in its refusal to address whether FBRI was a party to the state court lawsuit.

In the "Background" section of the Bankruptcy Court's initial Memorandum Opinion and Order (375/D.E. 3-34), there is a reference to the state court lawsuit originally involving 17 defendants.  This statement is included only as a contextual reference and does not constitute an adjudicated finding.  The Bankruptcy Court's

follow-up order (375/D.E. 3-45) does not address a specific number of defendants and, states that it had no intention of determining whether FBRI had been joined as a separate defendant at any time.

In their first two issues on appeal, Debtors seek a finding that there were only 15 defendants in the state court lawsuit and that FBRI was not one of them.  The specific defendant count is of no significance to any issues before the Bankruptcy Court.  That Court's only concern was whether the Debtors, however named or served, were dismissed in every conceivable individual capacity, consistent with the order of discharge.  Debtors' seek to eliminate any prejudicial effect the "17 defendants" remark might have on their state court argument that FBRI was not joined as a separate legal entity.  Alternatively, they seek a "15 defendants" count to use in their favor.

Federal courts are courts of limited jurisdiction.  *E.g., Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377 (1994); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998).

> They possess only that power authorized by Constitution and statute, *see Willy v. Coastal Corp*., 503 U.S. 131, 136–137, 112 S.Ct. 1076, 1080, 117 L.Ed.2d 280 (1992); *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986), which is not to be expanded by judicial decree, *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951).  It is to be presumed that a cause lies outside this limited jurisdiction, *Turner v. Bank of North America*, 4 U.S. (4 Dall.) 8, 11, 1 L.Ed. 718 (1799), and the burden of establishing the contrary rests upon the party asserting jurisdiction, *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 182–183, 56 S.Ct. 780, 782, 80 L.Ed. 1135 (1936).

*Kokkenen, supra.*

Debtors do not establish any jurisdictional basis for the Bankruptcy Court to make a finding regarding the number of defendants in a state court personal injury proceeding filed under state law.  Neither the Bankruptcy Court nor this Court has jurisdiction to determine what parties have been properly joined in the state court lawsuit.  *See generally*, *Stern v. Marshall*, 131 S.Ct. 2594, 2619-20 (2011).  The Bankruptcy Court concluded:

> Whether, under Texas Rules of Civil Procedure and the laws of the State of Texas, the [Creditors] appropriately sued a separate legal entity distinct from [Debtors] individually and [Debtors] aka Body of Christ Camp, dba Freedom Bible Research Institute, a Free Church [sic], or whether they may now amend their pleadings to include any such entity are legal questions within the purview of the State Court.  No statements made in this Court's prior Order are intended to influence the State Court in its determination of state law matters.

375/D.E. 3-45, p. 2.

This Court agrees with the Bankruptcy Court.  The earlier "17 defendants" remark has no legal significance.  This Court has no reason to make any findings regarding the number of parties to the state court litigation, or whether FBRI was made a party to the state court lawsuit.  The claims made in state court pursuant to state law by a non-debtor against a non-debtor are not matters properly before this Court.  Debtors' Issues 1 and 2 are OVERRULED.

**B. The Bankruptcy Court did not err because Creditors were in contempt of the discharge injunction.**

An order for contempt is reviewed, overall, as a matter committed to the trial court's discretion, while particular fact findings are subject to the clearly erroneous standard of review.  Fed. R. Civ. P. 52(a); Fed. R. Bankr. 8013; *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995); *Federal Deposit Insurance Corp. v. LeGrand*, 43 F.3d 163, 166 (5th Cir. 1995).  Questions of law are reviewed de novo.  *In re Green Hills Development Co., L.L.C.*, 741 F.3d 651, 654 (5th Cir. 2014).

**1. The automatic stay and the discharge injunction.**

The bankruptcy stay of 11 U.S.C. § 362 automatically commences on the date the bankruptcy petition is filed—at the outset of the bankruptcy case—and automatically terminates, in a Chapter 7 case, upon issuance of a discharge order.  11 U.S.C. § 362(a), (c)(2)(C).  The automatic stay temporarily enjoins any act to prosecute a pre-petition claim against a debtor or to recover or collect a claim against any of the debtor's property.  11 U.S.C. § 362(a).  Relief from the stay may be granted, as here, to allow a creditor to liquidate a claim for purposes of determining that creditor's right to a distribution from the assets of the estate.  11 U.S.C. § 362(a)(1).

In contrast, a discharge under 11 U.S.C. § 727(b) imposes a permanent injunction as of the date of discharge—at the end of the bankruptcy case—and it eliminates liability for any pre-petition debt against the debtor or the debtor's property.  11 U.S.C. § 524(a).  This is the "fresh start" of bankruptcy and is predicated on the idea that any liability on a pre-petition debt has been finally evaluated, prioritized, and adjudicated vis-à-vis the

debtor's pre-petition assets according to the Bankruptcy Code.  To avoid the preclusive effect of a bankruptcy discharge, the creditor must prosecute, within the scope of the bankruptcy case, a proceeding to either prevent the debtor from obtaining a discharge altogether, or prevent the debtor from obtaining a discharge of the creditor's specific debt.  11 U.S.C. §§ 523, 727.  Here, Creditors took no action to avoid the overall discharge or to except their personal injury claim from that discharge.

The Debtors' discharge did not discharge FBRI or Camp.  *See generally*, 11 U.S.C. § 524(e).  However, the import of § 524(a) is to absolve the Debtors of future liability.  Creditors have not demonstrated any reason that their claim against FBRI would permit them to continue to prosecute the claim against Debtors individually.  Thus, to avoid a finding of contempt, Creditors must show that their actions did not violate the discharge injunction—that they were not seeking to impose future liability on Debtors for a pre-petition claim.

### 2.  Creditors' arguments for proceeding against Debtors post-discharge.

Creditors make three arguments to defeat the contempt finding, each of which fails:  (1) they are permitted to prosecute the claim against Debtors, nominally, in order to determine FBRI's liability; (2) they need to keep the Debtors as parties to the suit for purposes of establishing FBRI's vicarious liability for Debtors' acts; and (3) the discharge injunction only prohibits efforts to collect, not efforts to liquidate.

### i.  Nominal Debtors

Creditors contend that Debtors are only nominal parties, joined because they are the stewards and only representatives of FBRI and Camp, the entities against which

Creditors would like to collect.  Courts allow creditors to include debtors in post-discharge proceedings when the debtors are involved only nominally, so that the claim may be collected against another separate entity that continues to be liable for the pre-petition claim.  Creditors rely on a number of such cases.[3]

In *Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 54 (5th Cir. 1993), the plaintiffs were permitted to proceed against a discharged debtor because the debtor had malpractice insurance coverage and plaintiffs agreed to use any judgment solely to claim the policy proceeds.  Another case, *In re Jet Florida Systems, Inc.*, 883 F.2d 970, 976 (11th Cir. 1989) (*per curiam*), addressed a defamation lawsuit against a discharged debtor.  The action was permitted solely for purposes of establishing the necessary liability to support a claim against the debtor's liability insurance company.

The court had to carefully evaluate the pleadings from *In re Cyrus II Partnership*, 2007 WL 4105961 (Bankr. S.D. Tex. 2007) to ensure that the debtor was named only as a nominal party so that a judgment could be obtained against others.  The *Cyrus* court cited *In re Munoz*, 287 B.R. 546, 554 (9th Cir. B.A.P. 2002) in which the debtor was a permissibly joined nominal party for purposes of determining workers compensation benefits to be paid by entities other than the employer/debtor.

While these cases demonstrate that it is permissible to join a debtor as a nominal party to a proceeding despite the bankruptcy discharge injunction, they also highlight a

---

[3]  One case on which Creditors rely is *In re Watson*, 192 B.R. 739, 744 (9th Cir. B.A.P. 1996).  However, that case involved the negotiation of a settlement agreement for a claim that was being litigated during the course of the bankruptcy case pursuant to an order lifting the stay.  Because it involved post-petition consideration, enforcement of the debt was not encompassed in the discharge injunction, which addresses only pre-petition claims.  The Court further notes that the *Watson* decision has been criticized.  *See, In re American Rice, Inc.*, 448 Fed. App'x 415, 420 (5th Cir. 2011).  At any rate, *Watson* does not apply to the facts of this case.

number of requirements for successfully doing so.  Generally speaking, there are three considerations that must be satisfied before a debtor may be nominally joined:  (1) the debtor must be a necessary party to the action; (2) the debtor may not be unduly burdened by legal costs or other consequences (usually where an insurer has the duty to defend or sole liability for any resulting judgment such that debtor may safely default); and (3) there must be no basis on which a prevailing plaintiff could collect a resulting judgment from the debtor or his assets.  *See generally*, *In re Catania*, 94 B.R. 250, 253 (Bankr. D. Mass. 1989); *In re Greenway*, 126 B.R. 253, 254-55 (Bankr. E.D. Tex. 1991).  These requirements are not met in this case.

With respect to the first requirement that the nominal party be a necessary party, Creditors have failed to demonstrate that Debtors are necessary parties to the state court action.  Many, if not most, of the nominal party cases involve insurance coverage in states such as Texas where the injured party is precluded from filing a direct action against the insurance company.  The policy requires that liability first be established against the insured.  *See Edgeworth, supra; Jet Florida, supra*.  Here, there is no insurance company involved and thus no bar to a first-party action.  The vicarious liability issue is addressed below.  There is no suggestion of any other obstacle to obtaining a judgment directly against FBRI (if FBRI is, or can be, joined in the case) that would require the participation of Debtors.

With respect to the second requirement that the nominal party not be unduly burdened by participation in the case, there is no insurance coverage to fund Debtors' defense.  Creditors assert that Debtors' claim of financial hardship with respect to their

participation is disingenuous because they did not oppose the lifting of the automatic stay during the pendency of the bankruptcy proceedings and have never before claimed hardship.  Yet circumstances have changed.  Now that they are post-discharge, Debtors must be vigilant so as not to risk judgment on a discharged debt.

Importantly, with respect to the third requirement, the pleadings were not at all clear that Debtors were named only nominally.   They were each served twice: individually and "dba FBRI aka Camp."  Creditors maintain that they are entitled to, and must, take a judgment against Debtors in their individual capacities and in their "dba" individual capacities.  Prior to the Bankruptcy Court's contempt order, there appeared to be no protections built into the pleadings to ensure that Debtors were involved only nominally.

A problem with any one of the three requirements can preclude a finding that Debtors were appropriately sued only in a nominal capacity.  The Bankruptcy Court was correct to find that Creditors had failed to limit Debtors' involvement in the state court action to a nominal role.  Creditors cannot avoid the contempt finding based on having joined Debtors to the state court action as nominal parties only.

### ii.  Vicarious liability for Debtors' conduct.

Creditors cite a number of cases to support their suggestion that to establish FBRI's liability, whether vicarious or otherwise, they must have Debtors joined as parties in the state court action.  D.E. 12, pp 39-40.  However, vicarious liability does not require joining Debtors as parties to the state court action.  *ISO Production Management 1982, Ltd. v. M&L Oil and Gas Exploration, Inc.*, 768 S.W.2d 354, 355 (Tex. App.—Waco

1989, no writ) (partnership may be sued without necessity of joining partners);[4] *Deal v. Madison*, 576 S.W.2d 409, 415-16 (Tex. Civ. App.—Dallas 1978, writ refused n.r.e.) (liability of joint tortfeasor may be determined without joining that person as a party), *disapproved on other grounds*, *Gold Kist, Inc. v. Texas Utilities Elec. Co.*, 830 S.W.2d 91 (Tex. 1992); *Moutos v. San Saba County Peanut Growers Ass'n*, 268 S.W.2d 761, 765 (Tex. Civ. App.—Austin 1954, no writ) (agent need not be joined where agent's conduct is basis for claim against disclosed principal). *See also*, TEX. CIV. PRAC. & REM. CODE § 33.001 *et seq.* (Texas Proportionate Liability statute).

Creditors have failed to show that Debtors must be parties to allow Creditors' claims against FBRI to go forward. Vicarious liability concerns do not justify a violation of the bankruptcy's discharge injunction.

### iii.  Conceptual limits of the discharge injunction.

Creditors further argue that the scope of the discharge injunction does not even reach the issue of party status. More specifically, they contend that 11 U.S.C. § 524(a)(2), (3) is only an injunction against actual collection, recovery, or offset of a debt as a personal liability of the debtor or against debtor's property. It does not, they say, prevent actions against a debtor solely to determine liability to collect from another.

Creditors' cases do not support their argument. In *First Fidelity Bank v. McAteer*, 985 F.2d 114 (3rd Cir. 1993), the bankruptcy debtor owned the credit life insurance policy on her husband's life, which had been purchased to secure payment of

---

[4]  The Court declines to offer any opinion on whether FBRI was a partnership or whether it was properly joined and served in the state court action. This citation is offered only to demonstrate that partnership liability, if any, does not require joinder of individual partners.

an automobile loan.  The wife was a contingent beneficiary in the event that the policy proceeds exceeded the amount of the debt it secured.  The wife's bankruptcy discharge did not prevent the claimants from making their claim to policy proceeds.  The debtor's ownership interest did not make the policy property of her bankruptcy estate because the unpaid loan amount exhausted the policy proceeds.  This case falls squarely under the principal that the bankruptcy discharge does not alter the right of a creditor to seek payment from a third party that is liable on the same debt.  Nothing about the case approves of bringing the case against the debtor for individual liability.

In *Green v. Welsh*, 956 F.2d 30 (2nd Cir. 1992), *In re Shondel*, 950 F.2d 1301 (7th Cir. 1991) and *In re Walker*, 927 f.2d 1138 (10th Cir. 1991), the courts permitted the tort suit against the debtor only for purposes of establishing the liability of the debtor's insurance carrier or another fund unrelated to the respective bankruptcies.  While the term "nominal" does not appear in those opinions, the holdings fit within the concept of maintaining a suit against a discharged debtor on a nominal basis only to establish the liability of the insurance company and liquidate the claim.  The discharge injunction simply does not reach the insurance company's liability.  But, it does bar any action to establish the debtor's liability for any other purpose; Creditors' cases do not alter that principle.

Because, initially, Creditors continued to prosecute their tort action against Debtors without taking action to limit the intended remedy so as to avoid violation of the discharge injunction, Creditors were seeking a judgment that would ostensibly be collectible against discharged Debtors in contempt of the Bankruptcy Court's order.

While they may be permitted to liquidate the personal injury tort claim solely for purposes of enforcing it against FBRI a/k/a Camp, the effort—taken without proper precautions—comes within the scope of the discharge injunction under 11 U.S.C. § 524(a)(2), triggering the Bankruptcy Court's contempt powers.  *See generally, Cyrus, supra* (requiring careful evaluation of pleadings to determine if they state a claim that exceeds a nominal one against the debtor).  Section 524 reaches, and can be used to prevent, broad pleadings—despite a claimant's representation that they will be used narrowly.  The threat that such broad pleadings pose is enough to grant a debtor relief.

### 3.  Creditors' willful conduct.

Creditors do not dispute the willful character of their conduct.  Instead, they rely on the three arguments, addressed above, that their conduct did not actually violate the discharge injunction.  It is undisputed that Creditors knew about the discharge, which on its face applied to Debtors "aka Body of Christ Camp, dba Freedom Bible Research Institute, A Free Church."  375/D.E. 3-17.  It is also undisputed that Creditors proceeded with the state court action post-discharge without any perceptible change of strategy against Debtors as individual parties, and that they refused and/or failed to alter their path when Debtors' counsel demanded that they do so in light of the discharge injunction.

"[V]iolation of the discharge injunction is 'willful' if the creditor knew the discharge injunction was invoked and intended the actions which violated the discharge injunction*."  Contreras v. United States Dept. of Veterans Affairs (In re Contrereas)*, 2007 WL 273128, *1, 2007 Bankr. LEXIS 181, *3-4 (Bankr. S.D. Tex. Jan. 26, 2007); *In re National Gypsum Co*., 118 F.3d 1056, 1063 (5th Cir. 1997) (discussing contempt

19 / 24

power to enforce discharge injunction).  Even on appeal, Creditors insist that they have the right to seek judgment against Debtors in their individual capacities.  Creditors' conduct is contemptuous of the discharge injunction ordered by the Bankruptcy Court.

Creditors seek to justify their conduct, complaining that Debtors have played a "shell game" with respect to ownership of FBRI and the Camp.  However, Debtors disclaimed their individual ownership in the course of the bankruptcy proceeding and Creditors' own evidence (Debtors' deed of the property) fails to provide support for their representations.  If Creditors wanted to contest the ownership of the real estate, they should have done so in the course of the bankruptcy proceeding.  Creditors were on notice of the separate existence prior to seeking the post-discharge trial setting in the state court lawsuit.  Consequently, they were willfully disobedient in seeking individual liability against the discharged Debtors in the state court litigation.

The Bankruptcy Court did not err in finding that Creditors willfully violated the Debtors' discharge injunction—a matter that falls within the Bankruptcy Court's contempt powers.  *See e.g.*, *In re Canning*, 706 F.3d 64, 69 (1st Cir. 2013).  The lift stay order no longer applied and Creditors willfully proceeded to obtain a judgment against Debtors individually.  The Bankruptcy Court's fact findings were not clearly erroneous, the determinations of law were correct under a de novo review, and there was no abuse of discretion in holding Creditors responsible for their conduct.  Creditors' Cross-Appeal Issue 1 is OVERRULED.

### C. The Bankruptcy Court did not err in awarding damages.

#### 1.  Standard of review

The Bankruptcy Court has the contempt power to award compensatory damages, including attorney's fees, in remedial civil contempt proceedings.   11 U.S.C. § 105; *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991); *In re Bradley*, 588 F.3d 254, 265 (5th Cir. 2009).  The assessment of damages is reviewed for abuse of discretion.  *Bradley, supra* at 261.  A court "abuses its discretion if it awards sanctions based on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Conner v. Travis County*, 209 F.3d 794, 799 (5th Cir. 2000) (internal quotation marks and citation omitted); *In re Lothian Oil, Inc.*, 531 Fed. App'x 428, 445 (5th Cir. 2013), *cert. denied*, No. 13-523, 2014 WL 102458 (2014).

#### 2.  Actual damages-Debtors' anguish.

Debtors complain that they submitted evidence of physical and mental distress to support an award for Betty McCulloch on a $100/day basis for a total of $7,700.  They also submitted some evidence for Frederick McCulloch's mental anguish, although they do not challenge the lack of an award of damages for Mr. McCulloch.  After a review of the evidence, the Court is not convinced that the Bankruptcy Court's failure to award actual damages for physical and mental distress was clearly erroneous as to facts, incorrect under the law, or an abuse of discretion given the record and the Bankruptcy Court's ability to observe and assess credibility.  *See* Fed. R. Bankr. 8013.  Debtors' Issue 3(a) is OVERRULED.

### 3. Punitive damages

The parties disagree as to whether the Bankruptcy Court has the power to issue punitive damages for a willful violation of the discharge injunction. *See generally*, *In re McClure*, 420 B.R. 655, 663 (Bankr. N.D. Tex. 2009), *modified on reconsideration*, 430 B.R. 358 (Bankr. N.D. Tex. 2010). Debtors sought punitive damages in the amount of the lesser of $25,000 or 5% of the Creditors' net worth. However, they have not demonstrated in what regard the Bankruptcy Court clearly erred with respect to the facts, misconstrued relevant law, or abused its discretion in refusing to issue punitive damages. Debtors' Issue 3(b) is OVERRULED

### 4. Coercive sanctions

Debtors contend that coercive sanctions in a daily amount (either $250 or $500 per day) from the date of the cease and desist letter to the date of compliance (seeking a total of $42,250) would have been appropriate. D.E. 9, p. 23. However, they do not brief any clearly erroneous fact findings, errors of law, or abuse of discretion. Debtors' Issue 3(c) is OVERRULED.

### 5. Actual Damages-Attorney's fees

Debtors sought attorney's fees in the amount of $26,060 and costs in the amount of $767.16 related to their prosecution of the contempt proceeding. Given their attorney's fee evidence, they complain that $5,000 in fees and $767.16 in costs are clearly inadequate damages. Creditors cross-appeal, complaining that the award is excessive. Given this Court's resolution of the other issues, and after review of the evidence on attorney's fees, there is no apparent clearly erroneous fact finding, error of

law, or abuse of discretion to merit a reversal of the Bankruptcy Court's award.  Debtors'

Issue 3(d) is OVERRULED; Creditors' Cross-Appeal Issue 2 is OVERRULED.

> **6.  Joint and several responsibility for damages awarded for contempt.**

Whether a damage award should be joint and several against the party and their

lawyer is a matter evaluated under an abuse of discretion standard.  *See, e.g*., *S.E.C. v.*

*AmeriFirst Funding, Inc*., 2008 WL 3260376 (N.D. Tex. Aug. 7, 2008).  Debtors have

failed to demonstrate that the Bankruptcy Court abused its discretion in awarding the

attorney's fees and costs as damages against Creditors rather than jointly and severally

against Creditors and their attorney.  Debtors' Issue 4 is OVERRULED.

> **D.  Whether the Bankruptcy Court erred in failing to modify the discharge injunction *nunc pro tunc* to conform to the lift stay order.**

Last, Creditors complain that the Bankruptcy Court should have modified its

discharge injunction to permit the continued prosecution of the state court case against

the Debtors, consistent with the previous order lifting the automatic stay.  They make this

argument despite the fact that the lift stay order was entered when it appeared that there

would be assets of the Debtors' estate for distribution—a matter later disproved, as

evidenced by the no asset finding.  374/D.E. 3-1, p. 7.

While Creditors apparently made this complaint to the Bankruptcy Court and

obtained a ruling denying the requested relief, Creditors did not include the issue in their

Statement of Issues on Appeal.   375/D.E. 3-3.   Even if the issue is raised in the

bankruptcy court and a ruling is made, it must be included in the statement of issues to be

preserved for appeal.  Fed. R. Bankr. 8006; *In re GGM, P.C.*, 165 F.3d 1026, 1032 (5th

Cir. 1999).  Creditors' Cross-Appeal Issue 3 is OVERRULED as waived.

## CONCLUSION

For the reasons set out above, all of the Debtors' Issues and all of the Creditors'

Cross-Issues are OVERRULED and the Bankruptcy Court's "Memorandum Opinion and

Order on Motion for Sanctions for Violation of the Discharge Injunction" (375/D.E. 3-

34) as clarified by subsequent Order (375/D.E. 3-45) is AFFIRMED.

ORDERED this 27th day of March, 2014.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE